**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SHAWN BIGGINS,                                    Case No. 3:23-cv-01917-JGC

        Plaintiff,

    v.

NORTHERN OHIO MEDICAL
SPECIALISTS, LLC,

        Defendant.

## ORDER

This is a whistleblower retaliation claim under the Taxpayer First Act. 26 U.S.C. §

7623(d).

Defendant Northern Ohio Medical Specialists, LLC (NOMS), is a medical services

provider based in Sandusky, Ohio. (Doc. 5, PgID. 47; Doc. 6, PgID. 73).

Plaintiff is Shawn Biggins. Plaintiff Biggins is a former employee of Defendant NOMS.

(Doc. 5, PgID. 48). He alleges that after he internally reported Defendant's suspected tax fraud,

Defendant illegally retaliated against him by terminating his employment. (*Id.* at PgID. 58–59).

Pending is Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's amended complaint.

(Doc. 6). Plaintiff responded (Doc. 7), and Defendant filed a reply (Doc. 8).

For the reasons that follow, I deny Defendant's motion.

### Background

On or around February 2, 2017, Defendant hired Plaintiff as its financial controller. (Doc.

5, PgID. 48). Plaintiff's duties included reviewing and approving certain of Defendant's financial

statements. (*Id.* at PgID. 49). Plaintiff had previously held positions with other employers as a

1

Certified Public Accountant ("CPA"). (*Id.* at PgID. 48). He maintained his CPA license throughout his employment as Defendant's controller. (*Id.*).

Plaintiff's background as a CPA provided Plaintiff with knowledge of U.S. tax laws and regulations. (*Id.*). As Defendant's controller, Plaintiff had access to Defendant's financial and tax records, as well as its bookkeeping and accounting practices. (*Id.*). During most of his employment with Defendant, Plaintiff received good performance reviews and no disciplinary action. (*Id.*).

On or around January 14, 2022, Plaintiff completed and approved Defendant's 2021 financial statements. (*Id.* at PgID. 49). On or around January 17, 2022, Plaintiff's supervisor and Defendant's Chief Financial Officer (CFO), Giovanni Spadaro, asked Plaintiff to re-run Defendant's 2021 financial statements. (*Id.*). During Plaintiff's review of the new financial statements, Plaintiff noticed that $150,000 in profits had disappeared from the statements for a group of Defendant's doctors in Cleveland. (*Id.*).

Further investigating what he initially suspected was a software error, Plaintiff identified an accounting entry in the Cleveland physician group's file from Spadaro dated January 16, 2022. (*Id.* at PgID. 49–50). The entry read, "Zero out ending holdback for tax purposes, reverse in January 2022." (*Id.* at PgID. 50). The entry was backdated to December 31, 2021. (*Id.*).

Plaintiff observed that the entry applied to all eleven doctors in the Cleveland and Youngstown areas who became part owners of Defendant in January 2022. (*Id.*). The new financial statements for these physicians reduced their reported profit by $700,000. (*Id.*). Plaintiff also identified no additional expenses in the new statements that might otherwise explain the reduction in reported profit. (*Id.*).

Plaintiff had never seen a similar entry in Defendant's financial statements (*Id.*). Plaintiff believed that treating the affected physicians for tax purposes as part owners of Defendant in 2021 when they did not become part owners of Defendant until 2022 allowed Defendant improperly to hide taxable 2021 compensation from federal, state, and local tax authorities. (*Id.* at PgID. 50–51).

On January 18, 2022, Plaintiff told Spadaro about his concerns during a standing, biweekly meeting. (*Id.* at PgID. 52). Spadaro was not concerned about his January 16 entry, which he said he made on the advice of Defendant's accountants. (*Id.*). Spadaro did not give Plaintiff any further documentary support for the accountants' position. (*Id.*). Spadaro refused to allow Plaintiff to revise Defendant's financial statements. (*Id.* at PgID. 53).

At a subsequent meeting with Spadaro on February 1, 2022, Plaintiff again raised his concerns regarding Defendant's potentially fraudulent tax reporting. (*Id.*). Plaintiff asked that an outside tax firm investigate. (*Id.*). Spadaro did not address Plaintiff's concerns at this meeting. (*Id.*). Spadaro cancelled additional scheduled meetings with Plaintiff on February 15 and March 1, 2022. (*Id.*).

On November 2, 2022, Plaintiff met with Spadaro and Defendant's Chief Human Resources Officer, Sarah Opfer, for a performance review. (*Id.*). Opfer and Spadaro told Plaintiff that team members had expressed concerns about him. (*Id.*). They placed Plaintiff on a Corrective Action Plan. (*Id.*). Spadaro and Opfer offered to meet further with Plaintiff. (*Id.* at PgID. 53–54). Opfer also asked to meet with Plaintiff and Defendant's CEO, Josh Frederick. (*Id.* at PgID. 54). Plaintiff declined to do so. (*Id.* at PgID. 53–54). Plaintiff instead sought to meet with a member of Defendant's board. (*Id.* at PgID. 54).

On November 29, 2022, Frederick, Opfer, and Defendant's Chief Legal Counsel, Ryan Williams, called Plaintiff. (*Id.*). During the call, Williams told Plaintiff that his conduct was inappropriate, that he could not meet with members of Defendant's board, and that Defendant intended to terminate Plaintiff's employment. (*Id.*). After Plaintiff claimed that such a termination would be wrongful, Williams withdrew Plaintiff's termination. (*Id.*). Williams then allowed Plaintiff to bring his concerns about potentially fraudulent tax reporting to Defendant's Compliance Committee. (*Id.*). Williams and Opfer were the Committee's only members. (*Id.* at PgID. 55).

On December 1, 2022, Plaintiff explained his concerns about Defendant's potentially fraudulent tax reporting to Williams and Opfer. (*Id.* at PgID. 54). Williams and Opfer then worked with Meaden & Moore, Defendant's outside accounting firm, to address Plaintiff's concerns. (*Id.* at PgID. 55).

Plaintiff appears to have had the opportunity for some engagement with Meaden & Moore regarding their assessment. (*Id.*). Plaintiff also appears to have further discussed with Williams and Opfer certain "incomplete or ignored issues" within the Meaden & Moore assessment (*Id.*). However, when Williams and Opfer completed their investigation of Plaintiff's concerns in January 2023, they did not share details of the investigation with Plaintiff. (*Id.* at PgID. 56).

While the investigation was ongoing, Plaintiff continued to express his concerns about the potentially fraudulent tax reporting practices he had identified. (*Id.* at PgID. 55–56). During a meeting with Spadaro and a human resources manager named Mia Feldmann on February 7, 2023, Plaintiff received a counseling form. (*Id.* at PgID. 57). This form described complaints from Defendant's vendors and team members about Plaintiff's "lack of professionalism, failure

to lead the team, and continuous condescending and sarcastic treatment to [his] direct reports." (*Id.*). Feldmann then terminated Plaintiff's employment with Defendant. (*Id.* at PgID. 58).

Plaintiff's sole claim against Defendant in this case arises under the Taxpayer First Act (TFA). 26 U.S.C. § 7623(d). Plaintiff alleges that his employment termination was unlawful retaliation under the TFA for his reporting of Defendant's potential tax fraud. (Doc. 5, PgID. 58–59).

## Legal Standard

### 1.  The Taxpayer First Act

The Taxpayer First Act prohibits an employer from terminating an employee "in reprisal for any lawful act done by the employee to provide information . . . regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud." § 7623(d)(1)(A). A plaintiff may bring a TFA claim in federal district court only after first filing a complaint with the Secretary of Labor and only "if the Secretary of Labor has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant." § 7623(d)(2)(A). Plaintiff alleges, and Defendant does not dispute, that Plaintiff's claim meets these administrative requirements. (Doc. 5, PgID. 47–48; Doc. 5-1).

Under the TFA, the evidentiary burden rests first on the plaintiff to show "(1) he engaged in protected conduct; (2) the defendants knew of his protected conduct; (3) the defendants subjected him to an adverse employment action; and (4) his protected conduct was a 'contributing factor' when the defendants subjected him to the adverse employment action." *Gammons v. Adroit Med. Sys., Inc.*, 91 F.4th 820, 826 (6th Cir. 2024). The burden then shifts to

the defendant to show through clear and convincing evidence that it would have taken its challenged action even absent the plaintiff's protected conduct. *Id.*

Defendant grounds its motion to dismiss on one primary argument—namely, that Plaintiff cannot show he engaged in protected conduct under the TFA. This is so, Defendant contends, because, in its view, Plaintiff's belief regarding the unlawfulness of Defendant's conduct was not objectively reasonable. (Doc. 6, PgID. 76–83).

### 2. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), I decide whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). This statement must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. I "must construe the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as true." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)).

### <u>Discussion</u>

### 1. The TFA's Reasonable Belief Standard

Defendant argues that Plaintiff's complaint fails as a matter of law to show Plaintiff reasonably believed Defendant's conduct violated federal tax law. Neither side points to controlling precedent regarding the reasonable belief standard in the TFA context. Instead, the parties rely on precedent discussing application of that standard in the context of other

whistleblower protection provisions, primarily the Sarbanes-Oxley Act. That Act prohibits a

publicly traded employer's retaliation against an employee:

> because of any lawful act done by the employee to provide
> information . . . regarding any conduct which the employee
> reasonably believes constitutes a violation of [certain enumerated
> sections], any rule or regulation of the Securities and Exchange
> Commission, or any provision of Federal law relating to fraud
> against shareholders . . . .

18 U.S.C. § 1514A(a)(1).

I agree with the parties that such precedents, although they do not arise under the TFA,

are instructive.[1] "[S]tatutes containing similar language and having a similar underlying purpose

should be interpreted consistently." *United States v. Hynes*, 467 F.3d 951, 967 (6th Cir. 2006)

(citing *Northcross v. Bd. of Educ.*, 412 U.S. 427, 428 (1973)). The "reasonably believes"

language of the TFA's anti-retaliation provision parallels that of the Sarbanes-Oxley Act. And at

least two proponents of the TFA in Congress viewed one of its purposes to be "extend[ing] anti-

retaliation provisions to IRS whistleblowers that are presently afforded to whistleblowers under

other whistleblower laws[, including the] Sarbanes-Oxley Act." 165 Cong. Rec. S2,090–91

(daily ed. Mar. 28, 2019) (statement of Sen. Charles Grassley for himself and Sen. Ronald

Wyden).

Also, I note that this conclusion aligns with that of the Department of Labor, to which the

TFA assigns primary enforcement authority. *See* § 7623(d)(2). The Occupational Safety and

Health Administration relied on Sarbanes-Oxley Act cases to explain its application of the

reasonable belief standard. Procedures for the Handling of Retaliation Complaints Under the

---

[1] Defendant suggests reaching this conclusion by relying on the evidentiary burden-shifting framework that the TFA and the Sarbanes-Oxley Act share. (*See* Doc. 6, PgID. 78); *compare* § 7623(d)(2)(B) (incorporating the adjudicative procedures and evidentiary burdens required under 49 U.S.C. § 42121(b)), *with* § 1514A(b)(2) (same)). But a shared burden-shifting framework across the two statutes does not necessarily imply that the substantive elements of claims under those statutes are the same.

Taxpayer First Act (TFA), 87 Fed. Reg. 12575, 12577 (Mar. 7, 2022) (codified at 29 C.F.R. pt. 1989) (citing, among other Sarbanes-Oxley Act cases, *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797 (6th Cir. 2015)).

The plaintiff in *Rhinehimer v. U.S. Bancorp*, an experienced certified financial planner, sued his former bank employer under the Sarbanes-Oxley Act's whistleblower protection provision. The *Rhinehimer* plaintiff alleged that his firing was retaliation for his reporting of a colleague's improper trades. *Rhinehimer*, 787 F.3d at 801. A jury found for plaintiff. *Id.* On appeal of its motion for judgment as a matter of law, the defendant argued that "the evidence did not support a finding that Plaintiff could have had an objectively reasonable belief" that the reported conduct was unlawful. *Id.* at 805.

After analyzing the development of the reasonable belief standard both within administrative decisions of the Department of Labor and across other Circuits, *id.* at 806–11, the Sixth Circuit held:

> [R]easonable belief involves both a subjective component and an objective component. The subjective component is satisfied if the employee actually believed that the conduct complained of constituted a violation of relevant law. Objective reasonableness is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.

*Id.* at 811 (internal citations and quotations omitted). The Sixth Circuit clarified that "objective reasonableness should be decided as a matter of law only when no reasonable person could have believed that the facts [known to the employee] amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Id.* (alteration in original) (internal citations and quotations omitted).

The Sixth Circuit explained that "an employee need not establish the reasonableness of his or her belief as to each element of the violation." *Id.* at 812. "Instead, the reasonableness of the employee's belief will depend on the totality of the circumstances known (or reasonably albeit mistakenly perceived) by the employee at the time of the complaint, analyzed in light of the employee's training and experience." *Id.*

Applying this reasonable belief standard in *Rhinehimer*, the Sixth Circuit concluded that the evidence "was more than adequate to sustain the judgment that Plaintiff possessed an objectively reasonable belief" regarding the defendant's unlawful conduct. *Id.* The *Rhinehimer* plaintiff "knew the structure of [the bank client's] long-held estate plans, and learned of trades that a reasonable investment professional (and particularly one with Plaintiff's training and experience) would recognize as inconsistent with those plans." *Id.* The *Rhinehimer* plaintiff was also "familiar with [his colleague's] incentives to place the trades and with [the bank's] past efforts to encourage [its client] to invest the funds in his trust account so that the bank would earn more money." *Id.*

### 2.  Whether Plaintiff's Belief Was Objectively Reasonable

In its motion to dismiss, Defendant contends that Plaintiff's belief in the unlawfulness of Defendant's conduct was objectively unreasonable. (Doc. 6, PgID. 78–83). I disagree. Accepting Plaintiff's well-pleaded factual allegations as true, as I must at this stage, I conclude that those allegations show an objectively reasonable belief in the unlawfulness of Defendant's conduct.

First, Plaintiff alleges the "training and experience" a reasonable person would need to assess the lawfulness of Defendant's tax reporting conduct. Like the *Rhinehimer* plaintiff, who was an experienced certified financial planner, Plaintiff here alleges (1) prior experience as a CPA; (2) that he maintained his CPA license throughout his period of employment with

Defendant; and (3) that this training supplied knowledge of IRS regulations and tax laws. (Doc. 5, PgID. 48). Plaintiff need not further allege specific legal training or knowledge. *See, e.g.*, *Sequeira v. KB Home*, 716 F. Supp. 2d 539, 551 (S.D. Tex. 2009) (concluding in a Sarbanes-Oxley Act whistleblower case that plaintiff's claim was objectively reasonable even though plaintiff lacked formal training on internal controls because "[t]he statute does not require . . . that the whistleblower have a specific expertise").

Plaintiff also alleges access to the information a reasonable person in Plaintiff's position would need to assess Defendant's conduct. As a financial controller for Defendant, Plaintiff was at least partially responsible for the accuracy of Defendant's financial statements, including that "revenue was correctly reported." (Doc. 5, PgID. 49). Plaintiff also worked directly with Defendant's CFO, who relied on Plaintiff to re-run Defendant's financial statements after making changes to them. (*See id.*). Like the plaintiff in *Rhinehimer* with knowledge of his employer's business incentives, his colleague's trades, and his client's estate plans, Plaintiff here alleges the knowledge of Defendant's accounting processes and tax reporting incentives that a reasonable person would need to assess Defendant's conduct.

Defendant argues that Plaintiff's allegations nevertheless amount to "general inquiries" that cannot support an objectively reasonable belief in the unlawfulness of Defendant's conduct. (Doc. 6, PgID. 79–83). I disagree.

In support of its argument, Defendant first cites *Tonra v. Kadmon Holdings*, 405 F. Supp. 3d 576 (S.D.N.Y. 2019). The plaintiff in *Tonra* alleged that his defendant former employer, a drug company, unlawfully fired him in retaliation for complaining that the company needed to report publicly the results of a failed drug study. *Id.* at 590. The *Tonra* Court concluded that the plaintiff alleging "generally that shareholders likely would want to know" about the failed study

was insufficient without further explaining "how a disclosure of the [failed] study results would impact shareholder decision making." *Id.* at 590–91.

Plaintiff's complaint here contains no similar weakness. Instead, the complaint contains a plain statement of how Defendant's challenged conduct, back-dating physician ownership changes, might violate federal tax law. As Plaintiff's complaint states:

> If the physician became an owner in 2021, NOMS would not pay them for their 2021 profits on a W-2 and instead let them take the profits as expenses . . . . By withholding or otherwise altering this compensation, which was originally categorized as W2 compensation for "employees," suddenly, NOMS was no longer going to report that paid income to the IRS, which would impact employer-related taxes for that same compensation.

(Doc. 5, PgID. 51). This is not the "general inquiry" of an employee with little knowledge of Defendant's accounting operations.

Defendant also rests its argument on *Nielsen v. AECOM Technology Corp.*, 762 F.3d 214 (2d Cir. 2014). The plaintiff in *Nielsen* was a fire engineering manager tasked "with ensuring that his subordinates' engineering plans were sufficient under applicable fire safety standards." *Id.* at 216–17 (internal quotations omitted). The defendant fired the plaintiff after the plaintiff complained about another employee allowing the approval of fire safety plans without first reviewing them. *Id.* at 217. The plaintiff was unable to show an objectively reasonable belief that the defendant's conduct was unlawful under the Sarbanes-Oxley Act because "[plaintiff's] complaint wholly fails to allege that the misconduct he reported would have significant repercussions for [defendant] or, by extension, its shareholders." *Id.* at 223.

Again, Plaintiff's complaint here is distinguishable. Plaintiff alleges underreported profit of $700,000. (Doc. 5, PgID. 50). When Plaintiff brought this concern to Defendant's Compliance Committee, the Committee asked Defendant's outside accounting firm to investigate. (Doc. 5,

PgID. 55). From these facts, a reasonable person might infer that such alleged underreporting would have "significant repercussions" for Defendant's tax liability.

I agree with Plaintiff that, at this stage of the proceeding, this case bears more in common with *Wood v. Dow Chemical Co.*, 72 F. Supp. 3d 777 (E.D. Mich. 2014). The defendants in that case fired the plaintiff after she reported "seven specific instances" of potentially fraudulent conduct under the securities laws. *Id.* at 781. In their motion to dismiss, the *Wood* defendants relied on *Nielsen* to argue that the plaintiff's allegations were "bare, conclusory claim[s]." *Id.* at 789. The *Wood* Court disagreed, finding that the plaintiff "allege[d] specific instances of conduct . . . supported by a factual explanation that a reasonable person of [plaintiff's] training and experience could likewise conclude that malfeasance was implicated." *Id.*

As in *Wood*, Plaintiff here alleges a "specific instance" of potentially unlawful conduct under federal tax law. (Doc. 5, PgID. 50). Plaintiff also supports that allegation with a "factual explanation" for why that conduct was potentially unlawful. (*Id.* at PgID. 50–51). And Plaintiff alleges he had the "training and experience" a reasonable person would need to evaluate whether "malfeasance was implicated." (*Id.* at PgID. 48).

### 3.   Meaden & Moore's Response

Plaintiff's factual allegations indicate that Defendant's outside accounting firm, Meaden & Moore, prepared a response to Plaintiff's concerns regarding potentially fraudulent tax reporting. (*See* Doc. 5, PgID. 55). In its motion, Defendant argues that "[d]isagreeing with outside CPAs on matters of accounting, without specifically identifying why the outside CPAs were wrong, is insufficient as a matter of law to support a finding Plaintiff was reasonable in believing NOMS violated tax law." (Doc. 6, PgID. 82). I disagree.

First, Defendant cites no direct support for this proposition. Defendant instead suggests that, because a taxpayer's "[r]eliance on accountants is *per se* reasonable," Plaintiff's belief in the unlawfulness of Defendant's accountant-approved conduct must be objectively unreasonable. (*Id.*). But the Sixth Circuit made clear that a defendant's liability for retaliation under the TFA does not hinge on the defendant's liability for its underlying challenged conduct. *Rhinehimer*, 787 F.3d at 812 ("[T]he reasonableness of the employee's belief will depend on the totality of the circumstances known (*or reasonably albeit mistakenly perceived*) by the employee at the time of the complaint, analyzed in light of the employee's training and experience." (emphasis added)). In other words, even if Meaden & Moore were right about Defendant's lack of tax reporting liability, that fact alone would not as a matter of law shield Defendant from liability for retaliation against Plaintiff under the TFA.[2]

Second, both the timing of Defendant's investigation into Plaintiff's concerns and the information Defendant shared with Plaintiff about that investigation matter in assessing the objective reasonableness of Plaintiff's concerns. I conclude that both considerations undermine Defendant's argument that Plaintiff's concerns were not objectively reasonable.

Instructive in this regard is *Day v. Staples, Inc.*, 555 F.3d 42 (1st Cir. 2009).[3] The plaintiff in *Day* was a low-level, inexperienced product returns analyst who expressed concerns

---

[2] I decline to consider, for purposes of this order, the alleged text of the Meaden & Moore response, which Defendant attached to its motion as Exhibit A. (Doc. 6-1). First, Exhibit A is not an attachment to a pleading. *See* Fed. R. Civ. P. 7(a). I may only consider pleadings in deciding a Rule 12(b)(6) motion to dismiss unless I treat the motion as "one for summary judgment." Fed R. Civ. P. 12(d). I decline to do so. Second, for the reasons discussed in the preceding paragraph, the text of Exhibit A is also not so "integral" to Plaintiff's claim that I may otherwise consider it on a motion to dismiss. *See Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

[3] The Sixth Circuit disapproved in *Rhinehimer* of the legal standard for Sarbanes-Oxley Act whistleblower retaliation claims that the First Circuit applied in *Day*. *Rhinehimer*, 787 F.3d at 806–11. But I nevertheless find persuasive the First Circuit's separate statement in *Day*, further discussed below, regarding the effect of a defendant's explanation for its conduct on the objective reasonableness of a plaintiff's concerns about that conduct.

about his defendant employer's product return business practices. *Id.* at 46–49. The defendant fired the plaintiff after at least four meetings, as well as substantial additional communication, between the plaintiff and more senior managers regarding the plaintiff's concerns. *Id.* During these interactions, the defendant's managers explained the reasons behind the defendant's business practices. *Id.* Concluding that the plaintiff's continued belief in the unlawfulness of the defendant's conduct became objectively unreasonable, the First Circuit held that "[a] company's explanations given to the employee for the challenged practices are also relevant to the objective reasonableness of an employee's belief in shareholder fraud." *Id.* at 58.

Here, when Plaintiff first raised his concerns with Spadaro, Defendant's CFO, at a meeting on January 18, 2022, Spadaro claimed his conduct was "what he was advised to do by 'accountants.'" (Doc. 5, PgID. 52). Spadaro did not "provide [Plaintiff] with any documentation or evidence supporting his position." (*Id.*). And Plaintiff alleges that the Compliance Committee's investigation, which involved Meaden & Moore, began at its earliest on December 1, 2022, and did not conclude until sometime in January 2023. (*Id.* at PgID. 54–56). Defendant then terminated Plaintiff on February 7, 2023, allegedly without providing details of the investigation to Plaintiff. (*Id.* at PgID. 56–58).

In *Day*, the plaintiff's concerns, despite the plaintiff's junior position, became objectively unreasonable only after the defendant's management extensively engaged with the plaintiff regarding those concerns. Here, Defendant terminated Plaintiff, one of its senior financial controllers, almost immediately upon the close of its investigation. Additionally, it did so allegedly without having shared the results of that investigation. Admittedly, Plaintiff's allegations suggest he may have persisted in voicing his concerns while he engaged with the Compliance Committee regarding the substance of Meaden & Moore's response. (*See* Doc. 5,

PgID. 55–57). But the complaint does not suggest Plaintiff persisted in his concerns *after* the close of the Committee's investigation. Nor could Plaintiff have afterward persisted for long, given the speed with which Defendant subsequently terminated Plaintiff.

An employee's continued concerns may "cease[] to be reasonable" after her employer provides her with a reasonable explanation of its challenged conduct. *Day*, 555 F.3d at 58. But it would undermine a core purpose of the TFA to allow an employer, after privately assuring itself that its conduct was lawful, to then retaliate promptly against its reporting employee for having asked questions in the first place.

## Conclusion

For the foregoing reasons, I conclude that Plaintiff's well-pleaded factual allegations, assuming they are true, show (1) that Plaintiff's belief in the unlawfulness of Defendant's conduct was objectively reasonable; and (2) that therefore Plaintiff engaged in protected conduct under the TFA.[4]

It is, therefore, ORDERED THAT:

1. Defendant's motion to dismiss under Rule 12(b)(6) (Doc. 6) be, and the same hereby is, denied; and

2. The Clerk will forthwith set a status/scheduling conference.

SO ORDERED.

*/s/ James G. Carr*

Sr. U.S. District Judge

---

[4] As I noted previously, Defendant's primary argument in its motion to dismiss is that Plaintiff failed to engage in protected conduct under the TFA because Plaintiff's belief in the unlawfulness of Defendant's conduct was not objectively reasonable. I reach no decision regarding whether Plaintiff's allegations suffice to support any other requirements of a TFA claim.